**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATELYN PRATE, individually, and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:22-cv-05478 |
| | ) | |
| v. | ) | District Judge: |
| | ) | Honorable Charles P. Kocoras |
| THE WHITE SHEEP, INC. | ) | |
| | ) | Magistrate Judge Cole |
| Defendant. | ) | |

---

**PLAINTIFF'S *AGREED* MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS AND COLLECTIVE, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE AND MEMORANDUM OF LAW IN SUPPORT**

# **TABLE OF CONENTS**

I.  INTRODUCTION AND BACKGROUND…………………………………………7

II.  THE PROPOSED SETTLEMENT………………………………………………8

    A.  The Settlement Class and Collective……………………………………………8

    B.  Payments to Class Members…………………………………………………..9

    C.  Incentive Award………………………………………………………………9

    D.  Settlement Administration and Notice…………………………………………10

    E.  Attorney's Fees and Costs……………………………………………………11

    F.  Reversion of Class Fund………………………………………………………11

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
STIPULATED CLASS ACTION SETTLEMENT AGREEMENT………………..……11

    A.  Settlements Are Encouraged in the United States District Courts……………..…..11

    B.  Criteria for Preliminary Approval Under Rule 23 Are Satisfied……………………13

        i. Preliminary Approval is Warranted Because Plaintiff
Establishes Each of the Rule 23 Requirements…………………………..………13

                a.  Numerosity……………………………………………………13

                b.  Commonality…………………………………………………13

                c.  Typicality……………………………………………………...14

                d.  Adequacy of Representation……………………………………14

                e.  Predominance and Superiority…………………………………...15

        ii. Preliminary Settlement Approval………………………………..…………16

                a.  Strength of Plaintiff's Case as Compared to the Amount of
Settlement and the Allocation of the Settlement Amount……….16
                b.  Complexity, Length, and Expense of Further Litigation………...17

                c.  No Opposition to the Settlement………………………………18

                d.  Opinion of Class Counsel……………………………………...18

                e.  Stage of Proceedings and Discovery Completed………..……….18

                f.  The Settlement is the Result of Arms' Length Negotiations Without

                    Any Hint of Collusion…………………………………………19

                g.  Proposed Notice Program is Fair and Adequate…………………19

    C.  Criteria for Settlement Approval Under 29 U.S.C. §216(b) is Also Satisfied………20

      i. The Proposed Settlement Agreement is Fair, Reasonable, and Adequate as Required by 29 U.S.C. §216(b)…………………………………………..…………21

     ii. The Settlement Agreement was Reached Through Extensive Arms' Length Negotiations……………………………………………………22

   iii. The Settlement Fund Provides Adequate Relief for the Settlement Class and Proposed Allocation Method Equitably Divides the Settlement Funds………………………………………………………………………..22

D.  Scheduling a Final Fairness Hearing is Appropriate…………………………………23

E.  Plaintiff Should be Awarded an Incentive Award……………………………………23

F.  Class Counsel's Request for Attorney's Fees and Costs Should be Approved………24

IV.     CONCLUSION…………………………………………………………………………..26

## TABLE OF CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*
     568 U.S. 455, 460 (2013)……………………………………………………..…15

*Amchem Prod., Inc. v. Windsor*
     521 U.S. 625 (1997)…………………………………………………………..…14,15

*Armstrong v. Bd. of School Directors of City of Milwaukee*
     616 F.2d at 305, 315 (7th Cir. 1980)…………………………………………………XX

*Bell v. PNC Bank, Nat. Ass'n*
     800 F.3d 360, 378 (7th Cir. 2015)…………………………….……………..…15

*Berger v. Xerox Corp. Ret. Income Guar. Plan*
     2004 U.S. Dist. LEXIS 1819 at *7 (S.D. Ill. 2004)………………………………...…24

*Butler v. Am. Cable & Tel., LLC*
     2011 WL 4729789 at *7 (N.D. Ill. 2011)…………………………………………..15

*Class Plaintiffs v. City of Seattle*
     955 F.2d 1268, 1276 (9th Cir. 1992)…………………………………..………….12

*Curry v. Kraft Foods Global, Inc.*
     2011 WL 4036129 at *7 (N.D. Ill. 2011)…………………………………………..16

*EEOC v. Hiram Walker 7 Sons, Inc.*
     768 F.2d 884, 889 (7th Cir. 1985)………………………………………….…...17

*Gillespie v. Equifax Info. Servs., LLC*
     2009 U.S. Dist. LEXIS 131242 at *10 (N.D. Ill. 2009)……………………………...19

*Gomez v. St. Vincent Health, Inc.*
     649 F.3d 583, 592 (7th Cir. 2011)…………………………………………………14

*Grove v. Principal Mutual Life Ins. Co.*
     200 F.R.D. 434, 445 (S.D. Iowa 2001)…………………………………………....18

*Hispanics United of DuPage County v. Village of Addison, Ill.*
     988 F.Supp. 1130, 1149 (N.D. Ill. 1997)……………………………………………..16

*Houston v. URS Corp.*
     2009 WL 2474055 at *9 (E.D. Va. 2009)…………………………………………21

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*
     270 F.R.D. 330, 342 (N.D. Ill. 2010)………………………………...……………....14

*In re Clark Oil 7 Refining Corp. Antitrust Litig.*
    422 F.Supp. 503, 507 (E.D. Wis. 1976)……………………….............................12

*In re Mexico Money Transfer Litig.,*
    164 F.Supp.2d 1002, 1019 (N.D. Ill. 2000)……………………………..17, 18, 19

*Isby v. Bayh*
    75 F.3d 1191, 1196 (7th Cir. 1996)……………………………….……...12, 16, 18, 23

*Keele v. Wexler*
    149 F.3d 589, 595 (7th Cir. 1998)………………………………..…………….14

*Lechuga v. Elite Engineering, Inc.*
    559 F.Supp.3d 736 (N.D. Ill. 2021)…………………………………….…………..13

*Lynn's Food Stores, Inc. v. United States*
    679 F.2d 1354 (11th Cir. 1982)…………………………………………12, 20, 21, 22

*Mangone v. First USA Bank*
    206 F.R.D. 222, 226 (S.D. Ill. 2001)………………………………………….……23

*McKinnie v. JP Morgan Chase Bank, N.A.*
    678 F.Supp.2d 806, 813 (E.D. Wis. 2009)……………………………………….19

*Mejdrech v. Met-Coil Sys. Corp.*
    319 F.3d 910, 911 (7th Cir. 2003)………………………………………………...15

*Meyenberg v. Exxon Mobil Corp.*
    2006 U.S. Dist. LEXIS 97057 at *18 (S.D. Ill. 2006)…………………………...18

*Mulvania v. Sheriff of Rock Island Cnty.*
    850 F.3d 849, 859-60 (7th Cir. 2017)………………………………………….…………13

*Paredes v. Mansanto Co.*
    2016 WL 1555649 at *1 (N.D. Ind. 2016)……………………………………….21

*Petrovic v. Amoco Oil Co.*
    200 F.3d 1140, 1148-49 (8th Cir. 1999)…………………………………………18

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797, 811-12 (1985)……………………………………………………20

*Ramah Navajo Chapter v. Babbitt*
    50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999)……………………………………25

*Rotuna v. W. Customer Mgmt. Grp. LLC*
   2010 WL 2490989 at *5 (N.D. Ohio 2010)…………………………………………...21

*Schmidt v. Smith & Wollensky, LLC*
   268 F.R.D. 323, 326 (N.D. Ill. 2010)…………...…………………………................13

*Starr, et. al. v. Chicago Cut Steakhouse, LLC*
   N.D. Ill. Case No. 12-cv-4416…………………………………………………17, 25

*Synfuel Techs., Inc. v. DHL Express (USA) Inc.,*
   463 F.3d 646, 652 (7th Cir. 2006)…………………………………………………..16

*Veizaga v. Nat'l. Bd. for Respiratory Therapy*
   1980 U.S. Dist. LEXIS 12670 (N.D. Ill. 1980)…………………………………….18

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338, 349-50 (2011)……………………………………….………....14

*Williams-Green v. J. Alexander's Rest., Inc.*
   277 F.R.D. 374 (N.D. Ill. 2011)………………………………………….……...14, 25

*Zolkos v. Scriptfleet, Inc.*
   2014 WL 7011819 (N.D. Ill. 2014)…………………………………………………..19

## OTHER AUTHORITY

**Rules**

*Fed. R. Civ. P. 23*……………………………………………………13, 15, 16, 20, 22

**Statutes**

*29 U.S.C. 216(b) ("the FLSA")*…………………………………………...7, 8, 9, 12, 20, 21, 24

*820 ILCS 105/1 ("the IMWL")*……………………………………………….7, 8, 14, 24

*820 ILCS 115/14(a)*…………………………………………………..7, 8, 14, 24

**Secondary Sources**

2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS 11.41 (3d ed. 1992)………12

## I.     <u>INTRODUCTION AND BACKGROUND[1]</u>

On October 6, 2022, Plaintiff filed her Collective/Class Action Complaint for Damages and Demand for Jury Trial ("Complaint") in the United States District Court for the Northern District of Illinois, Eastern Division, on behalf of herself and others similarly situated. *See* D.E. 1. Plaintiff's Complaint alleges that Defendant violated the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. ("the IMWL") and Fair Labor Standards Act ("FLSA") by failing to pay restaurant servers applicable minimum wages during their employment at The White Sheep restaurant in Orland Park, Illinois. *Id.* Specifically, Plaintiff alleged that Defendant operated an illegal tip pool by requiring Plaintiff and other servers to contribute portions of their tips to a tip pool that were then distributed to ineligible recipients. *See* D.E. 1. On October 28, 2022, Defendant filed an Answer and Affirmative Defenses to the Plaintiff's Collective and Class Action Complaint and denied all material allegations set forth in this case and asserted numerous affirmative defenses. *See* D.E. 4. Defendant continues to deny that it engaged in any misconduct in connection with wage and hour practices at the restaurant and regarding its servers, and further denies that it has any liability or engaged in any wrongdoing of any kind associated with the claims alleged in this case.

Throughout the duration of this case, the Parties have actively engaged in document production, review, and analysis of various payroll and class information concerning the pay practices at the restaurant. The Parties exchanged detailed class-wide data concerning the claims and attended a Court-supervised settlement conference on May 9, 2023, with Magistrate Judge Jeffrey Cole. *See* D.E. 25. During the settlement conference the Parties were able to reach agreement on material terms on a class and collective-wide settlement of these claims and

---

[1] A Joint Motion to Exceed 15-Page Limit is currently pending before the Court. *See* D.E. 29.

thereafter worked through preparing a written agreement, the instant motion, and other related filings.

The Parties now present their Stipulated Class and Collective Action Settlement Agreement ("Settlement Agreement") to this Court, which they believe is a fair, reasonable, and adequate resolution of a *bona fide* dispute for the Settlement Class. *See* Stipulated Class Action Settlement Agreement attached to the Richards Declaration at **Exhibit A**. Plaintiff seeks preliminary approval of the Settlement Agreement, which would resolve the claims of the proposed Settlement Class which consists of approximately 88 persons. The Stipulated Class Action Settlement Agreement satisfies all criteria for preliminary settlement approval. Accordingly, Plaintiff seeks approval of the Stipulated Class Action Settlement Agreement, and requests that this Court enter an Order, substantially in the form attached as Exhibit E to the Settlement Agreement, that grants such relief.

## II.    THE PROPOSED SETTLEMENT

Attached to this motion as **Exhibit A** is the Declaration of Jordan Richards, Esq. which includes a copy of the Stipulated Class and Collective Action Settlement Agreement attached thereto. *See* **Ex. A**. The following summarizes the Stipulated Class and Collective Action Settlement Agreement's terms:

### A.  The Settlement Class and Collective

Because Plaintiff brought claims under both the IMWL and the FLSA, the case involves both class and collective action procedures. Plaintiff's IMWL claims are governed by class action procedures under Rule 23, while her FLSA claims involve collective action procedures, including those set forth in 29 U.S.C. §216(b). For purposes of settlement, the parties agree to the following Settlement Class and Collective, which will consist of:

**All servers who worked for Defendant at The White Sheep in Orland Park, Illinois, from October 6, 2019, through the date of preliminary approval**.

The Settlement Class is comprised of approximately 88 Class Members. Although the parties have agreed to stipulate to class and collective certification for purposes of settlement, the White Sheep expressly reserves and retains its rights to contest class certification and/or final collective certification through trial should the parties' Settlement Agreement not be approved and/or is terminated or fails to become effective. The Parties have contemporaneously filed on the docket a stipulation regarding class and collective certification for purpose of settlement.

### B. Payments to Class Members

The Stipulated Class Action Settlement Agreement requires Defendant to create a common settlement fund in the amount of One Hundred Fifty Thousand Dollars ($150,000.00). *See* **Ex. A**. The Parties estimate that approximately $69,765.45 will be available for Class Member payments. *Id.* Each Class Member's estimated minimum share of the Settlement Fund will be calculated pursuant to the number of hours worked by the Class Member during the approximately three years prior to the filing of the Complaint in this action through the date of preliminary approval, calculated to the best of the parties' ability based on The White Sheep's payroll data. *Id.* This is explained in further detail in Paragraph 1.32 of the Settlement Agreement. Each Class Member will receive no more than $1.30 for each hour worked during said period. Further, by filing an Approved Claim Form, the Class Member is thereby opting-in to the claim brought by Plaintiff pursuant to the FLSA and the collective action.

### C. Incentive Award

The Settlement Agreement also contemplates an Incentive Award to the Plaintiff, to acknowledge her service to the class in obtaining this settlement. Plaintiff and her counsel request

an Incentive Award of Twelve Thousand Five Hundred Dollars ($12,500.00) to be paid to the Plaintiff, and Defendant has agreed to pay that amount, subject to Court approval. This payment would be in addition to any Settlement Payment the Plaintiff receives as a Class Member in this matter. In light of her effort resulting in a $150,000.00 settlement on behalf of the Settlement Class, the Plaintiff is, respectfully, entitled to receive the Incentive Award sought.

### D. Settlement Administration and Notice

The Parties have agreed to use ILYM Group ("ILYM") as Claims Administrator in this matter. Class Counsel has settled multiple wage and hour class actions where ILYM was the administrator, and he has found that it does a superior job at a cost significantly lower than its competitors. The duties of the Claims Administrator are set forth in Paragraph 5.1 of the Settlement Agreement. *See* **Ex. A**. The cost of administering the settlement for 88 individuals is expected to be approximately $15,000.00. Defendant agrees to cooperate with the Claims Administrator to ensure that it has all of the information reasonably necessary to perform its tasks, as set forth in the Settlement Agreement. Class Counsel will file with the Court a declaration from the Claims Administrator of due diligence and proof of mailing regarding the mailing of the Notice Packets prior to the Final Approval Hearing.

The proposed Notice Packets and claims process provides that the Class Members will be informed of and given the opportunity to participate in this settlement by receiving the following documents: (1) a Class Action Settlement Notice which explains the terms and conditions of the Settlement to the Class Members (the "Class Notice") via U.S. Mail and email (if available), the proposed forms of which are attached to the Settlement Agreement as Exhibits C (Propose Email Correspondence) and D (U.S. Mail Notice Packet); (2) a Claim Form which the Class Member must complete and submit in order to participate in the Settlement, the proposed form of which is

attached to the Settlement Agreement as Exhibit A; and (3) a return envelope addressed to the Claims Administrator to allow the Class Member to return the Claim Form. Further, the forms also direct Class Members to a website, which will be set up by the Claims Administrator where Class Members can access forms and additional information.

The proposed Notice Packet and claims process (including the website to be created) includes all essential information about the lawsuit required under Rule 23 and 29 U.S.C. §216(b), including the persons affected, the nature of the Action, the possibility of, and method for, excluding themself from the settlement, or objecting to the settlement, and an explanation of how to obtain additional information relating to the Settlement from the Claims Administrator and Class Counsel.

### E. Attorney's Fees and Costs

The Settlement Agreement provides that Class Counsel will move the Court for an award of attorney's fees and costs. Under the Settlement Agreement, Class Counsel will seek fees and costs in the amount of Fifty-Two Thousand Five Hundred Dollars ($52,500.00), which represents thirty-five percent (35%) of the settlement fund. Defendant agrees as part of the Settlement Agreement that it will not object to Class Counsel's request for fees and costs up to that amount.

### F. Reversion of Class Fund

Pursuant to Paragraph 2.1(h) of the Settlement Agreement, any amount of the settlement fund left after administration of the claims process will revert back to Defendant.

### III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE STIPULATED CLASS ACTION SETTLEMENT AGREEMENT.

### A. Settlements Are Encouraged in the United States District Courts.

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks

of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy… favors settlements, particularly where complex class action litigation is concerned"); *Lynn's Foods Stores, Inc. v. United States*, 679 F.2d 1354 (11th Cir. 1982) (court approval in FLSA cases is favored "to promote the policy of encouraging settlement of litigation"); *see, also, Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996); 2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.* at § 21.632-34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22 et seq.

The decision to approve a proposed settlement is committed to the district court's sound discretion. *See In re Clark Oil 7 Refining Corp. Antitrust Litig.,* 422 F.Supp. 503, 507 (E.D. Wis. 1976) ("Under Rule 23(e), 'a class action shall not be dismissed or compromised without the approval of the court"); *Isby,* 75 F.3d at 1196 ("we review the determination of the district court [regarding approval of a class settlement] only for an abuse of discretion"). With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed settlement. The purpose of preliminary evaluation of

proposed class action settlements is to determine whether the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. 2 Newberg & Conte, § 11.25 at 11-36, 11-37. At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

### B.  Criteria for Preliminary Settlement Approval Under Rule 23 are Satisfied.

In deciding a motion for preliminary approval of a class action settlement and certification of a settlement class, the court must undertake two essential inquiries: (1) whether the Rule 23 requirements are satisfied; and (2) whether the proposed settlement is within the range of possible approval. *See, e.g., Lechuga v. Elite Engineering, Inc.,* 559 F.Supp.3d 736 (N.D. Ill. 2021).

### i.  Preliminary Approval is Warranted Because Plaintiff Satisfies Each of the Rule 23 Requirements.

### a.  Numerosity

To satisfy Rule 23's numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). The proposed class here is comprised of 88 individuals, which is well over the number the Seventh Circuit has found sufficient to satisfy Rule 23(a). *See Mulvania v. Sheriff of Rock Island Cnty.,* 850 F.3d 849, 859-60 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement"); *see, also, Schmidt v. Smith & Wollensky, LLC,* 268 F.R.D. 323, 326 (N.D. Ill. 2010).

### b.  Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). Plaintiff must "demonstrate that the class members have suffered the same injury" and that their claims "depend upon a common contention . . . capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke." *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349-50 (2011); *Williams-Green v. Alexander's Rests., Inc.*, Case No. 09-cv-5707, 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims . . . arise from a common nucleus of fact based upon standard conduct and, therefore, has satisfied the commonality requirement under Rule 23(a)(2)."). This requirement is satisfied in this case because all Class Members held the same job, were compensated in the same manner, and assert the same legal theory based on the invalid tip pool in the restaurant.

### c. Typicality

"Typicality is closely related to commonality." *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 342 (N.D. Ill. 2010) *citing Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998) (a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"). Plaintiff contends that all 88 members of the Class were subject to the same alleged unlawful practices in the restaurant which results in the same alleged wage violations under the IMWL.

### d. Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 625 (1997). The adequacy requirement is comprised of two parts: (1) the adequacy of the named plaintiff as representative of the proposed class's myriad members; and (2) the adequacy of the proposed class counsel. *Gomez v. St. Vincent Health, inc.,* 649 F.3d 583, 592 (7th Cir. 2011). Plaintiff's interests are aligned with the interests of the absent class members: they held the same position, suffered the same alleged injury, which was based on the same payment scheme, during the same time

period. No conflicts of interest are apparent. Class Counsel's qualifications are set forth in the Richards Declaration attached as **Ex. A**. As explained in the Richards Declaration, Class Counsel has previously been named class counsel in other wage and hour matters throughout the country, and has the experience, resources, and ability to sufficiently and zealously represent the interests of the Class.

### e. Predominance and Superiority

Certification under Rule 23(b)(3) is appropriate if the proposed class meets two additional requirements: common questions of law or fact must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem,* 521 U.S. at 623. "A common question predominates over individual claims if 'a failure of proof on the [common question] would end the case' and the whole class 'will prevail or fail in unison.'" *Bell v. PNC Bank, Nat. Ass'n,* 800 F.3d 360, 378 (7th Cir. 2015) *quoting Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455, 460 (2013). The common question that predominates in this case is whether the restaurant had a policy of requiring servers to contribute to a tip pool that was later distributed to any ineligible recipients. If this question were tried, a negative answer would eviscerate the class claims, while an affirmative answer would entitle each class member to relief. Superiority is likewise satisfied because certain class members will likely recover less (based on their total hours worked) than the expense any such member would incur to litigate his or her claim on an individual basis. *See Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003); *Butler v. Am. Cable & Tel., LLC,* 2011 WL 4729789 at *7 (N.D. Ill. 2011) (superiority requirement met where "the cost of litigation would

likely outweigh the benefit" of pursuing claims individually); *Curry v. Kraft Foods Global, Inc.,* 2011 WL 4036129 at *7 (N.D. Ill. 2011) ("Deciding each claim separately would be an extremely inefficient use of both judicial and party resources, and many individual class members would otherwise be unlikely to bring their claims").

### ii. Preliminary Settlement Approval

A proposed class settlement will be preliminarily approved if it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006). To determine whether a settlement should be preliminarily approved, courts use a five-factor test, in which they consider;

> (1) The strength of the plaintiff's case compared to the terms of settlement;
> (2) The likely complexity, length, and expense of continued litigation;
> (3) The amount of opposition to the settlement;
> (4) The opinion of competent counsel; and
> (5) The stage of the proceedings and amount of discovery completed.

*Synfuel,* 463 F.3d at 653; *Isby,* 75 F.3d at 1199.

A court must not focus on any individual component of the compromise, but instead must view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists where the settlement is the result of arms' length negotiations. *Hispanics Untied of DuPage County v. Village of Addison, Ill.,* 988 F.Supp. 1130, 1149 n. 6 (N.D. Ill. 1997). The Parties' settlement meets all these criteria and clearly falls "within the range of possible approval."

> a. <u>Strength of Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Amount</u>

One of the key considerations in evaluating a proposed settlement is the strength of the plaintiff's case compared to the amount of the defendant's offer. *See Isby,* 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v.*

*Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to approve the settlement here, the Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing Plaintiff's claims. *See id.*

The consideration to be paid by Defendant to the Class members here is considerable and the plan of allocation is imminently reasonable. The Settlement provides for an amount of approximately **$69,765.45** to be paid to Class members who worked at Defendant's restaurant in Illinois during the Class Period. The Settlement Payment each Class Member is eligible to receive is proportionate to the total number of hours worked by them as a server for Defendant during the Class Period. Accordingly, the settlement is an excellent result for participating Class Members. *See Starr, et. al. v. Chicago Cut Steakhouse, LLC,* N.D. Ill. Case No. 12-cv-4416 (granting preliminary approval of class action settlement for restaurant servers that provided a class fund of $50,000.00 for class consisting of 566 servers).

b.        <u>Complexity, Length, and Expense of Further Litigation</u>

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litig.,* 164 F. Supp.2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Plaintiff would be required to incur the time and expense of administering notice to Class Members and permitting them an opportunity to opt-out of this case. Thereafter, the Parties would be required to prepare for a trial to be conducted relating to the claims of approximately 88 Class Members and the defenses raised by Defendant with respect to the class and the individual Class Members. Defendant has already raised formidable defenses in response to the operative Complaint. Post-trial litigation, including appeals, would be a near certainty, and the possibility of bankruptcy is always present. Thus, additional litigation undoubtedly would increase the expenses of this litigation but will not reduce

the risks the litigation holds for the Class Members. *See Isby,* 75 F.3d at 1199; *see, also, In re Mexico Money Transfer Litig.,* 164 F.2d at 1019. Accordingly, the remaining burden, expense, and risk for Plaintiff and the Class Members would be substantial, as continued litigation will require resolution of complex issues at considerable expense.

        c.        <u>There is No Opposition to the Settlement</u>

At this preliminary stage, the Plaintiff is unaware of any opposition to the settlement, which provides an excellent result to all Class Members.

        d.        <u>Opinion of Class Counsel</u>

Class Counsel is experienced in class action litigation, and has a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement. In Class Counsel's opinion, the Settlement is fair, reasonable, and adequate. *See* Exhibit A. It is appropriate for the Court to place significant weight on the unanimously strong endorsement of this Settlement by Class Counsel. When experienced counsel supports the settlement, as he does here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litig.,* 164 F. Supp.2d at 1020; *see, also, Meyenberg v. Exxon Mobil Corp.,* 2006 U.S. Dist. LEXIS 97057 at *18 (S.D. Ill. 2006). In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Veizaga v. Nat'l. Bd. for Respiratory Therapy,* 1980 U.S. Dist. LEXIS 12670 (N.D. Ill. 1980) *citing Armstrong v. Bd. of School Directors of City of Milwaukee,* 616 F.2d at 315 (7th Cir. 1980); *see, also, Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148-49 (8th Cir. 1999); *Grove v. Principal Mutual Life Ins. Co.,* 200 F.R.D. 434, 445 (S.D. Iowa 2001).

        e.        <u>Stage of the Proceedings and Discovery Completed</u>

As explained above, this complex class action was resolved only after the Parties carefully analyzed the claims, class data, conducted extensive research, and data analysis. While the settlement is reached at the early stages of litigation, the case has advanced enough for Class Counsel to fully and fairly evaluate the value of the Settlement and believe it to be in the best interest of the Parties.

f.    <u>The Settlement is the Result of Arms' Length Negotiations Without Any Hint of Collusion</u>

In determining whether a settlement was reached absent any collusion between the Parties, courts look to whether the settlement negotiation was "intense, vigorous, and at arms' length." *In re Mexico Money Transfer Litig.,* 164 F. Supp.2d at 1020. The litigation and negotiation activities in this matter demonstrate the adversarial nature of this litigation. The fact that this settlement was reached during a Court-supervised settlement conference with Magistrate Judge Cole further supports the finding that there is no collusion behind the settlement. Such arms' length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Gillespie v. Equifax Info. Servs., LLC,* 2009 U.S. Dist. LEXIS 131242 at *10 (N.D. Ill. 2009). *See, e.g., Zolkos v. Scriptfleet, Inc.,* 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) *citing McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F.Supp.2d 806, 813 (E.D. Wis. 2009).

g.    <u>Proposed Notice Program is Fair and Adequate</u>

The Notice Program and claims process set forth in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court 'to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a

court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985).

Plaintiff proposes to send the Class Notice attached to the Settlement Agreement as Exhibit C and D to all Class Members via email and first-class U.S. Mail, with the Claims Administrator to take appropriate follow-up steps regarding class Notices that are returned as undeliverable. Several cases in this Circuit have approved such use of first-class mailings of a notice and claim form to provide notice to absent class members. Plaintiff also proposes to send each Class Member the Claim Form attached to the Settlement Agreement as Exhibit A, along with a return envelope addressed to the Claims Administrator to facilitate Class Members' submission of the Claim Form. Courts have approved notice procedures with documents similar to the ones proposed by the Parties here because they are in a format which is easy for the Class Member to comprehend. Rule 23 requires that a court facilitate the "best notice" to class members that conveys the needed information "clearly and concisely in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). The short but thorough notice proposed by the Parties is likely to be read and understood by Class Members. In addition, if the Class Members have any questions regarding the case or the Settlement, they are provided and encouraged to contact either the website to be set up by the Claims Administrator, the Claims Administrator, or Class Counsel. Accordingly, the Parties' proposed notice and claims process meets the requirements of Rule 23 and 29 U.S.C. §216(b), and Plaintiff requests that the Court approve the forms attached thereto.

### C. <u>Criteria for Preliminary Settlement Approval Under 29 U.S.C. §216(b) are Also Satisfied.</u>

Similarly, under the FLSA, employees may settle their claims if the parties agree on the terms and the court approves the settlement as "a fair and reasonable resolution of a bona fide dispute over the FLSA provisions." *Lynn's Foods Stores,* 679 F.2d at 1353-1355. "Normally, a

settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Paredes v. Mansanto Co.*, 2016 WL 1555649, at *1 (N.D. Ind. Apr. 18, 2016).

### i. The Proposed Settlement Agreement is Fair, Reasonable, and Adequate as Required by 29 U.S.C. §216(b).

The Settlement Agreement's terms outlined above are fair and reasonable for the Parties. A bona fide dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due. *Houston v. URS Corp.*, 2009 WL 2474055, at *9 (E.D. Va. Aug. 7, 2009). In reviewing the settlement of a plaintiff's FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Rotuna v. W. Customer Mgmt. Grp. LLC*, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indicia of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

A bona fide dispute exists in this case as the liability and damages issues were vigorously contested. The Parties disagree as to whether liability exists in this case and, if liability were proven, the extent of the damages. Specifically, among other disputes, the parties disagree on Plaintiff's ability to prove liability (individually and on a class/collective basis), a willful violation of the FLSA, and the amount/extent/scope of damages, including any award of liquidated damages

and/or civil penalties due to the members of the Settlement Class. Although both parties continue to believe in the merits of their respective claims and defenses, given the information learned throughout discovery, the time and expense associated with continuing to litigate this matter, and the uncertainty of dispositive motion practice and trial, the parties agree that a compromise is appropriate at this stage of the litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching."). Payments to Settlement Class Members are directly proportionate to amounts allegedly due to them under the described methodology, less amounts commensurate with the risk inherent in further litigation as discussed above. These amounts constitute a reasonable and adequate recovery, and the parties' evaluation of The White Sheep's actual timekeeping and payroll records and the risks of continued litigation.

### ii. The Settlement Agreement was Reached Through Extensive Arm's Length Negotiations.

Despite the Parties' divergent views regarding Plaintiff's assertions in her Complaint, they were able to work toward a compromise in this matter and negotiate at arm's length to resolve the claims of Plaintiff and Settlement Class Members — as set forth above pursuant to the Fed. R. Civ. P. 23 standards.

### iii. The Settlement Fund Provides Adequate Relief for the Settlement Class and the Proposed Allocation Method Equitably Divides the Settlement Funds.

The proposed settlement allocation, specified within the Settlement Agreement, explains the allocation calculation process for each Settlement Class Member. This is a reasonable recovery in light of the amount of the alleged damages from an alleged invalid tip pool, the type of claims in dispute, and the risks in the case, including the time and expense of heavily-fact based discovery

and in briefing dispositive motions and the risk that Plaintiff, any opt-ins, and the Settlement Class members would (if prevailing at summary judgment) receive nothing after a complex and lengthy trial. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (citing *Isby*, 75 F.3d at 1199 (where the "continuation of the litigation would require the resolution of many different and complex issues, would entail considerable additional expense, and would likely involve weeks, perhaps months of trial time," the Seventh Circuit upheld trial court's conclusion that "the settlement represented an outcome at least comparable, if not superior, to that which plaintiffs might achieve by proceeding to trial."). The settlement allocation was calculated by Class Counsel, directly proportionate to the number of hours worked by servers as explained in the Settlement Agreement.

### D. SCHEDULING A FINAL FAIRNESS HEARING IS APPROPRIATE

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence, objections, and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement and offer arguments in support of final approval. In addition, Class Members, or their independent counsel, may be heard in support of or in opposition to the Settlement. The Court can determine at the Final Fairness Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Final Approval Hearing should be scheduled no earlier than 45 days after the close of the Notice period to allow Defendants sufficient time to satisfy the notice requirements of the Class Action Fairness Act requirements set forth in 28 U.S.C. §1715.

### E. PLAINTIFF SHOULD BE AWARDED INCENTIVE AWARD

The Settlement Agreement provides for an incentive award to Plaintiff Prate, to acknowledge her service to the class. Plaintiff and her counsel request that an Incentive Award of

Twelve Thousand Five Hundred Dollars ($12,500.00) be paid. This payment would be in addition to any settlement payment that Plaintiff will receive in this matter. Plaintiff provided valuable information to her counsel prior to and during the litigation, participated in a full-day settlement conference, and was in constant and detailed communication with Class Counsel. In light of her efforts resulting in a $150,000.00 settlement on behalf of the Class members, an incentive award to the Plaintiff is appropriate. *See Berger v. Xerox Corp. Ret. Income Guar. Plan,* 2004 U.S. Dist. LEXIS 1819 at *7 (S.D. Ill. 2004) (awarding incentive award of $20,000.00 to each plaintiff).

F. **CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND COSTS SHOULD BE APPROVED**

The FLSA and IMWL provide that reasonable attorney's fees and costs shall be awarded to prevailing plaintiffs. 29 U.S.C. §216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); 820 ILCS 105/12(a); 820 ILCS 115/14(a). If the Court grants approval of the settlement, Plaintiff and the Class Members will be prevailing parties, because they will have an award entered in their favor.

Defendant has agreed to not oppose Class Counsel's request for fees in an amount up to Fifty-Two Thousand Five Hundred Dollars ($52,500.00) which represents 35% of the settlement fund. *See* **Ex. A**. Class Counsel thoroughly researched the potential claims, reviewed voluminous records, conducted interviews, engaged in negotiations, and participated in a settlement conference. Moreover, the amount of attorney's fees and costs Defendant has agreed to pay does not include compensation to Class Counsel for any of the fees he will incur in finishing this settlement, which will take at least dozens of hours because he will continue to advise and field questions and inquiries from the Class Members he represents, and based on experiences in other class settlements, will need to handle dozens of telephone calls, e-mails and inquiries from Class

Members regarding the settlement, details of the settlement, the release language, etc. This also does not take into consideration the time that will be spent preparing a motion for final approval of the class settlement. Given that there are approximately 88 Class Members, additional fees could be substantial. Additionally, Class Counsel has incurred $587.40 in costs.

The proposed settlement brings substantial value to Class members. Each Class Member will benefit and share in the $150,000.00 settlement fund that compensates them for the claims alleged in this case. The fact of a significant monetary recovery without the uncertainty or risks of trial and appeals qualifies this settlement as an outstanding result. The recovery obtained for these Class Members meets or exceeds results obtained in similar cases. *See Williams-Green, et. al. v. J. Alexander's Restaurant, Inc.*, 277 F.R.D. 374 (N.D. Ill. 2011) (approving class settlement for servers); *Starr, et. al. v. Chicago Cut Steakhouse, LLC*, No. 12-cv-4416 (approving class settlement for servers where $50,000.00 covered payments made to 566 servers).

Furthermore, the release that the Class Members will agree to in this settlement is limited only to their unpaid wage claims against Defendant and the Released Parties. Thus, any claims a Class Member may have, other than those which were or could have been asserted in this litigation, remain unaffected. The absence of a general release for the Class Members (excluding the named Plaintiff) exemplifies the results achieved for the class. *See Ramah Navajo Chapter v. Babbitt,* 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release was further evidence of an exceptional result in favor of class members). Accordingly, Class Counsel requests that the Court grant their unopposed request for attorney's fees and costs in the amount of $52,500.00. *See Williams-Green,* No. 09-cv-5707, 277 F.R.D. 374 (N.D. Ill. 2011) (Magistrate Judge Cole approving attorney's fees in the amount of 40% of the class fund in class action settlement in wage and hour case).

## IV.    CONCLUSION

For the reasons set forth above, the Court should, most respectfully, approve the Class and Collective Action Settlement reached by the Parties.

WHEREFORE, Plaintiff, KAITLYN PRATE, respectfully requests that this Honorable Court enter an Order: (a) granting the relief sought in this motion; (b) entering the proposed Preliminary Approval Order attached to the Settlement Agreement as Exhibit E; and (b) scheduling a final fairness hearing on a date and time convenient for the Court, and enter any and all such further relief as may be deemed just and appropriate under the circumstances.

Respectfully submitted,

**USA EMPLOYMENT LAWYERS –
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33301
*Counsel for Plaintiffs*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Illinois Bar No. 6328923
*Jordan@jordanrichardspllc.com*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 19, 2023, he electronically filed the forgoing **PLAINTIFF'S AGREED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS AND COLLECTIVE, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE AND MEMORANDUM OF LAW IN SUPPORT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

**STEPHANIE M. DINKEL, ESQUIRE**
KOEHLER DINKEL LLC
900 S. Frontage Rd. Suite 300
Woodridge, Illinois 60517
Telephone: (630) 505-9939

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Illinois Bar No. 6328923