**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATELYN PRATE, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:22-cv-05478 |
| v. | ) ) | District Judge: Honorable Charles P. Kocoras |
| THE WHITE SHEEP, INC. | ) ) | Magistrate Judge Cole |
| Defendant. | ) ) | |

---

**PLAINTIFF'S *AGREED* MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

I.      INTRODUCTION AND BACKGROUND………………………………………7

II.     FINAL APPROVAL OF CLASS/COLLECTIVE SETTLEMENT IS APPROPRIATE UNDER THE CIRCUMSTANCES……………………………………………...…7

    A.  Plaintiff Has Satisfied Rule 23 Notice Requirements…………..…………………7

    B.  The Settlement is Fair, Reasonable, and Adequate….………………………………9

        i.      Final Approval of the Settlement is Warranted Based on the Strength of Plaintiff's Case as Compared to the Value of the Settlement, and Allocation of the Settlement is Reasonable…………………………………………..9

        ii.     Final Approval is Warranted in Light of Complexity, Length, and Expense of Further Litigation…………………………………………………..11

        iii.    There is No Opposition to the Settlement………………………………12

        iv.     Opinion of Competent and Experienced Class Counsel Favors Final Settlement…………………………………………………………………..12

        v.      Stage of Proceedings and Discovery Completed Weigh in Favor of Final Approval of the Class and Collective Settlement………………………..13

        vi.     Settlement was the Result of Arms-Length Negotiations at a Court-Supervised Settlement Conference Without Any Hint of Collusion…….14

III.    FINAL APPROVAL UNDER 29 U.S.C. § 216(b) IS ALSO WARRANTED……….14

IV.     THE REQUESTED ATTORNEY'S FEES AND COSTS ARE REASONABLE AND WARRANTED………………………………………………………………..16

    A.  Percentage of the Fund Method of Awarding Fees is Appropriate…………………17
    B.  Plaintiff's Request for 35% of Common Fund is Typical and Reasonable………….17
    C.  Plaintiff's Request is Warranted by Benefit Conferred on the Class, the Results Obtained, and the Risks Taken by Class Counsel………………………18

V.      INCENTIVE AWARD TO PLAINTIFF IS WARRANTED………………………..19

VI.     ILYM GROUP HAS FULFILLED RESPONSIBILITIES AND EARNED THE REQUESTED AMOUNT IN CLAIMS ADMINISTRATION COSTS……….21

VII.    DEFENDANT PROVIDED NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT AND THERE ARE NO OBJECTORS……………………………21

VIII.   CONCLUSION………………………………………………………………………23

2

**TABLE OF CASES**

*Acevado v. Workfit Medical LLC*
    187 F.Supp.3d 370 (W.D.N.Y. 2016)………...……………………………………………12

*A.C.L.U. v. United States Gen. Servs. Admin.*
    235 F.Supp.2d 816 (N.D. Ill. 2002)……………….………………………………….…..12

*Adoma v. U. of Phoenix, Inc.*
    913 F. Supp. 2d 964 (E.D. Cal. 2012)……………….…………………………………….…22

*American International Group, Inc. v. ACE INA Holdings, Inc.*
    2012 U.S. Dist. LEXIS 25265 (N.D. Ill. Feb. 28, 2012)……..…….…….………..9, 20, 21

*Armstrong v. Bd. of School Directors of City of Milwaukee*
    616 F.2d 305 (7th Cir. 1980)………………………...…………………………....……….9

*Berger v. Xerox Corp. Ret. Income Guar. Plan*
    2004 U.S. Dist. LEXIS 1819 (S.D. Ill. 2004)………….…………………………20, 21

*Boeing Co. v. Van Gemert*
    444 U.S. 472 (1980) ………..……….………………..………………………………..…17

*Braynen v. Nationstar Mortgage, LLC*
    2015 WL 6872519 (S.D. Fla. 2015)………….……………………………………….…12

*Briggs, et. al. v. PNC Financial Services Group, Inc., et. al.,*
    2016 WL 7018566 (N.D. Ill. 2016)…………….……………………..……..…..20, 21

*Cook v. Niedert*
    142 F.3d 1004 (7th Cir. 1998)……………………………...…..…………..…………..20

*EEOC v. Hiram Walker 7 Sons, Inc.*
    768 F.2d 884 (7th Cir. 1985)……...………………………………………….…..…....10

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)……………….……………………………………………………..7

*Espenscheid v. DirectSat USA, LLC*
    688 F.3d 872 (7th Cir. 2012) ……...………………………………………...………..20

*Evans v. Jeff D.*
    475 U.S. 717 (1986)……………………………..……………………….…………16

*Freeman v. Total Security Management*
    2014 WL 4829480 (W.D. Wis. 2014) …..………………………………………..…..12

*Gaskill v. Gordon*
    160 F.3d 361 (7th Cir. 1998)……………………………………………...……17, 18

*Hispanics United of DuPage County v. Village of Addison, Ill.*
    988 F.Supp. 1130 (N.D. Ill. 1997)……………………………………….…………..9

*Houston v. URS Corp.*
    2009 WL 2474055 (E.D. Va. 2009) ………….…………………………………………15

*In re Continental Ill. Sec. Litig.*
    962 F.2d 566 (7th Cir. 1992)……………...………………………………………..18

*In re Dairy Farmers*
    80 F.Supp.3d 838 (N.D. Ill. 2015)…………………………………………………18

*In re Kentucky Grill Chicken Coupon Marketing & Sales Practices Litig.*
    2011 WL 5599129 (N.D. Ill. 2011)……………….……..…………………………17

*In re Mexico Money Transfer Litig.,*
    164 F.Supp.2d 1002 (N.D. Ill. 2000)……………….……..…………………………12

*In re Online DVD-Rental Antitrust Litig.*
    779 F.3d 934 (9th Cir. 2015)………….……………………………………………12

*In re Synthoid Marketing Litig.*
    264 F.3d 712 (7th Cir. 2001)…………………………………………………………20

*Isby v. Bayh*
    75 F.3d 1191 (7th Cir. 1996)………………….…………………...................9, 13

*Johnson et al. v. Meriter Health Services Employee Retirement Plan*
    2015 WL 13546111 (W.D. 2015) …………………………….…….......................22

*Juvera v. Salcido*
    2013 WL 6628039 (D. Ariz. 2013) ……………………………………………………21

*Lynn's Food Stores, Inc. v. United States*
    679 F.2d 1354 (11th Cir. 1982)………………….……………………………15, 16

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*
    834 F.2d 677 (7th Cir. 1987)………………….…………………...……………………10

*Marshall v. Holiday Magic, Inc.*
    550 F.2d 1173 (9th Cir. 1977)………………….………………………………..11

*Meyenberg v. Exxon Mobil Corp.*
2006 U.S. Dist. LEXIS 97057 (S.D. Ill. 2006)…………..……………………..17, 18

*Newman v. Stein*
464 F.2d 689 (2nd Cir. 1972)………………………………………..…...…………10

*Paredes v. Mansanto Co.*
2016 WL 1555649 (N.D. Ind. 2016)……………….…………………...…………15

*Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*
390 U.S. 414 (1968)………………………………………………………...……11

*Ramah Navajo Chapter v. Babbitt*
50 F.Supp.2d 1091 (D.N.M.1999)………………………  …………………18, 19

*Rotuna v. W. Customer Mgmt. Grp. LLC*
2010 WL 2490989 (N.D. Ohio 2010)……………………………………………...15

*Sanchez v. Roka Akor Chicago LLC*
2017 WL 1425837 (N.D. Ill. 2017)……………………………….…………….18

*Silverman v. Motorola*
2012 U.S. Dist. LEXIS 63477 (N.D. Ill. 2012)………..……………………….17

*Starr v. Chicago Cut Steakhouse, LLC*
N.D. Ill. Case No. 12-cv-4416, ECF No. 135, (May 13, 2015) ..……………….......11, 19

*Sullivan v. DB Invs., Inc.*
667 F.3d 273 (3rd Cir. 2011)………………..……………………….…………..12

*Sutton v. Bernard*
504 F.3d 688, 692 (7th Cir. 2007) ……………….…………………...……..17

*Sylvester v. CIGNA Corp.*
369 F.Supp.2d 34 (D.Me. 2005)………..……………………….…………..12

*Synfuel Techs., Inc. v. DHL Express (USA) Inc.,*
463 F.3d 646 (7th Cir. 2006)…………..……………….  …………….....7, 9, 10

*Taubenfeld v. AON Corp.*
415 F.3d 597 (7th Cir. 2005)………….…………………………….………..17

*West Virginia v. Chas. Pfizer & Co.*
314 F.Supp. 710 (S.D.N.Y. 1970)……………………….……………...….10

*Williams v. MGM-Pathe Communications Co.*

129 F.3d 1026 (9th Cir. 1997)……………..……………………………………...………..16

*Williams-Green v. J. Alexander's Rest., Inc.*
277 F.R.D. 374 (N.D. Ill. 2011)……………………………………….….………..18, 19

## <u>OTHER AUTHORITY</u>

**Rules**

*Fed. R. Civ. P. 23*…………………………………………………………….…………7, 8, 9

**Statutes**

*29 U.S.C. 216(b) ("the FLSA")*…………………………………………..………………….. 14, 16

*820 ILCS 105/1 ("the IMWL")*……………………………………..…………………………16

*820 ILCS 115/14(a)* ………………………………………..……………………….………16

**Secondary Sources**

5 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS 11.41 (4th ed. 2002)………..…14

## I.  INTRODUCTION AND BACKGROUND

On August 8, 2023, this Court granted preliminary approval of the Class and Collective Settlement reached by the Parties in this wage and hour dispute. *See* D.E. 38-39. The Parties now seek final approval. The Court should grant final approval because the Class and Collective Settlement easily satisfies the required class settlement standard. Of the 88 Class Members to whom notice was sent, a total of 35 Class Members submitted timely claim forms. One individual submitted a claim form that could be determined as late, but the parties accepted the claim form. No objections to the Settlement were filed by class members, and no individuals sought exclusion from the Settlement. Further, despite sending notice out of caution pursuant to the Class Action Fairness Act, no one filed an objection or otherwise contacted counsel for the parties regarding any objection. The Settlement yields an outstanding result for the Class. As set forth below, final approval of this class and collective action settlement is therefore appropriate because the settlement is fair, adequate, and reasonable. *See, e.g., Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2005). Accordingly, on or after November 7, 2023, Plaintiff respectfully requests that the Court enter the proposed Final Approval Order attached hereto as **Ex. A**.

## II.  FINAL APPROVAL OF THE CLASS AND COLLECTIVE SETTLEMENT IS APPROPRIATE UNDER THE CIRCUMSTANCES.

### a.  Plaintiff has Satisfied the Rule 23 Notice Requirements.

The notice procedure set forth within the Class and Collective Settlement Agreement comports with the Federal Rules of Civil Procedure and due process. Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). In *Eisen,* the United States Supreme

Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175.

Here, the Claims Administrator, ILYM Group, fully performed all of its obligations and the Parties have complied with all terms of the Court's Preliminary Approval Order. More specifically, on August 8, 2023, the Claims Administrator received the Court approved text for the Notice Packet from Class Counsel. *See* Declaration of Nathalie Hernandez attached as **Ex. B**.

On August 23, 2023, the Claims Administrator received the class data file from Defense Counsel. *Id.* at ¶5. The class list contained the names, addresses, and where available, email addresses of 88 individuals. *Id.* at ¶5. Before mailing the Notice Packets, the Claims Administrator processed, organized, and updated addresses for class members using the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing and e-mailing the Notice Packet. *Id.* at ¶6.

On August 30, 2023, the Notice Packet was mailed, via U.S. First Class Mail, to all 88 individuals contained in the class list. *Id.* at ¶7. Only four (4) notice Packets were returned to the Claims Administrator as undeliverable. *Id.* at ¶8. A computerized skip trace on the 4 returned Notice Packets was performed in an effort to obtain an updated address for the purpose of re-mailing the Notice Packet, and, as a result, 3 updated addresses were obtained and the Notice Packets were promptly re-mailed to those Settlement Class Members, via U.S. First Class Mail. *Id.* at ¶8. Only 1 Notice Packet was deemed undeliverable. *Id.* at ¶10.

A total of 35 individuals submitted accepted claims forms, which represents a participation rate of 37.5% of the 88 Settlement Class Members. *Id.* at ¶12. The Parties' and the Claims

Administrator's efforts to effectuate notice to the Class met the requirements of Rule 23(c)(2)(B) and comports with due process.

### b. The Settlement is Fair, Reasonable, and Adequate.

Settlement of class action litigation is favored by federal courts, particularly in complex class actions. *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996); *American International Group, Inc. v. ACE INA Holdings, Inc.,* 2012 U.S. Dist. LEXIS 25265 (N.D. Ill. Feb. 28, 2012). To approve a proposed settlement of a class action under Rule 23, the Court must find that the proposed settlement is "fair, adequate, and reasonable." *See* Fed. R. Civ. P. 23(e)(1)(C); *Synfuel,* 463 F.3d at 652. In the Seventh Circuit the courts view the facts in the light most favorable to the settlement. *Isby,* 75 F.3d at 1199. Furthermore, a court should not substitute its own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 315 (7th Cir. 1980). In making its determination, a court must consider the following factors: (1) the strength of plaintiff's case compared with the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the opinion of competent counsel; and (5) the stage of proceedings and the amount of discovery completed. *Synfuel,* 463 F.3d at 653. Moreover, a court must view the settlement in its entirety, rather than focus on any individual component. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arms-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Illinois,* 988 F.Supp. 1130, 1149 n. 6 (N.D. Ill. 1997).

> **i. Final Approval of the Settlement is Warranted Based on the Reasonable Allocation of the Settlement and the Strength of Plaintiff's Case as Compared to the Value of the Settlement.**

The most important consideration is the strength of the plaintiff's case compared to the value of the settlement. *Synfuel,* 463 F.3d at 653. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to approve the Settlement, the Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing plaintiff's claims. *Id.*

Had this litigation continued without reaching a full and final settlement, there were a myriad of possible outcomes including ones far less favorable to Plaintiff and the Class Members. Bona fide disputes exist as to whether Plaintiff and the Class Members were properly compensated in accordance with the FLSA and IMWL. Thus, as in any complex action, the Plaintiff generally faced uncertainties. *See West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"). Determining a "reasonable" settlement amount is never a simple mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement…" *Newman v. Stein,* 464 F.2d 689, 693 (2nd Cir. 1972).

The Settlement in this case provides substantial monetary benefits now, without the time, difficulties, stress, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"). The Settlement provides approximately **$69,765.45** to be paid to Class Members who worked at Defendant's restaurant in Illinois during the Class Period

which was based on the expected preliminary approval. This settlement fund will be distributed by the Claims Administrator pursuant to a claims-made process. Each Server who timely submitted a valid claims form will receive approximately $1.30 for each hour worked during the Class Period. The Settlement Payment each Class Member is eligible to receive is proportionate to the total number of hours worked by them as a tip pool participant for Defendant during the Class Period. Accordingly, the settlement is an excellent result for participating Class Members. *See Starr, et. al. v. Chicago Cut Steakhouse, LLC,* N.D. Ill. Case No. 12-cv-4416, ECF No. 135 (May 13, 2015) (granting preliminary approval of class action settlement for restaurant servers that provided a class fund of $50,000.00 for class consisting of 566 servers). Thus, the Class and Collective Settlement Agreement ensures that the Claimants will receive significant monetary relief that is distributed on an equitable basis. This supports a finding that the Settlement is fair, adequate, and reasonable.

### ii. Final Approval is Warranted in Light of Complexity, Length, and Expense of Further Litigation.

Avoiding the delay and risk of protracted litigation is another reason courts approve settlements. *See, e.g.*, *Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration of the litigation"); *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir. 1977).

Here, further litigation would require risk, time, and expense associated with trial and possible appeals. Trial of this action alone would consume several weeks of preparation and require the expenditure of hundreds of thousands of dollars in additional costs and attorney time. As such, the costs of further litigation become considerable in terms of both time and money with uncertain results and with no guarantee that Defendant could satisfy any ultimate judgment obtained in this case (if any). Under these circumstances, the benefits of a guaranteed recovery

today, rather than an uncertain result years into the future, are readily apparent. *In re Mexico Money Transfer Litig.,* 164 F. Supp.2d 1002, 1019 (N.D. Ill. 2000).

### iii. There is No Opposition to the Settlement.

Notably, not a single class member has objected to the settlement. The lack of objectors indicates strong support for the Settlement and favors a finding that it is "fair and reasonable." *See A.C.L.U. v. United States Gen. Servs. Admin.,* 235 F.Supp.2d 816, 819 (N.D. Ill. 2002); *In re Mexico Money Transfer Litig.,* 164 F.Supp.2d 1002, 1020-21 (N.D. Ill. 2000) (the fact that "99.9% of class members have neither opted-out nor filed objections to the proposed settlements… [is] strong circumstantial evidence favoring settlement").; *Freeman v. Total Security Management* No. 12 CV 461, 2014 WL 4829480 (W.D. Wis. Sept. 29, 2014) (concluding that the settlement, which had no objectors or excluders, was fair, reasonable, and adequate). Moreover, none of the Class Members opted-out of the Settlement, which further indicates that final approval of the Settlement is warranted. Furthermore, the participation rate in this case exceeds 37%, which is substantial in wage and hour class action settlements. *See, e.g., Braynen v. Nationstar Mortgage, LLC,* 2015 WL 6872519 at *15 (S.D. Fla. 2015) (*citing In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944-45 (9th Cir. 2015) (granting final approval where there was a less than 4% claims rate)); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 329 n.60 (3rd Cir. 2011) (recognizing that claims rates "rarely" exceed 7% "even with the most extensive notice campaigns"); *Acevado v. Workfit Medical LLC,* 187 F.Supp.3d 370, 380 (W.D.N.Y. 2016) (finding that 21% participation rate in a wage and hour class settlement is a "high participation rate for a claims made settlement"); *Sylvester v. CIGNA Corp.,* 369 F.Supp.2d 34, 52 (D.Me. 2005) ("Claims made settlements regularly yield response rates of 10 percent or less").

### iv. Opinion of Competent and Experienced Class Counsel Favors Final Approval of this Settlement.

Where Class Counsel are qualified, courts heavily rely on their opinion that the settlement is fair, reasonable, and adequate, especially where discovery and settlement negotiations are thorough and extensive. *See Isby,* 75 F.3d at 1200. Here, Class Counsel, who are experienced and knowledgeable in wage and hour class action litigation, are intimately familiar with the strengths and weaknesses of this case. The Court preliminarily appointed Mr. Richards as Class Counsel in this case. *See* D.E. 36. Mr. Richards' qualifications are set forth within the attached declaration. *See* Declaration of Jordan Richards, Esq. attached as **Ex. C**. Based on their extensive vetting of the legal and factual issues in the face of vigorous opposition by The White Sheep, Inc., it is Class Counsel's judgment that the Settlement reach in this case is fair, reasonable, and adequate under all of the attendant circumstances. *Id.* Class Counsel reached his opinion based on his experience, and intimate knowledge of the facts and legal issues in this case, and a comprehensive analysis of the strengths, weaknesses and value of claims and defenses balanced against the risks, time, and costs and expense of further protracted litigation and appeals. *Id.*

### v. The Stage of Proceedings and Discovery Completed Weigh in Favor of Final Approval of the Class and Collective Settlement.

This complex wage and hour class action has been pending more than a year and was resolved only after Defendant agreed to produce verified documentation concerning the class size, number of hours worked by the class, and various financial information concerning the Defendant's liquidity. During the course of the litigation, the Parties engaged in extensive legal research and factual investigation, analysis, and Class Counsel have spent several hours over the past year investigating the claims against The White Sheep in the face of considerable odds and against a skilled and formidable opponent. The stage of litigation has advanced to a state that the Class Counsel could fairly and fully evaluate the merits of the case, potential damages, and the

probable course of the litigation absent settlement. As a result, the Parties negotiated the Settlement

with complete knowledge regarding the strengths and weaknesses of the case and the benefits of

the Settlement.

> **xi.** **Settlement was the Result of Arms-Length Negotiations Conducted at a Court-Supervised Settlement Conference Without Any Hint of Collusion.**

The is no collusion or fraud with respect to this Settlement, which was reached during a

Court-supervised Settlement Conference. Your Honor presided over the Settlement Conference

where all Parties were represented by competent counsel. It has been widely recognized that:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length counsel for the class, is presented for court approval.
>
> The initial presumption of fairness of a class settlement may be established by showing:
>
> a. That the settlement has been arrived at by arm's-length bargaining;
>
> b. That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and
>
> c. That the proponents of the settlement are counsel experienced in similar litigation.

5 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTION 11.41 at 11-88, 11-91

(4th ed. 2002). In this case, as explained above, the terms of the Settlement were reached during a

Court-supervised Settlement Conference by experienced counsel after thorough investigation and

analysis. The foregoing demonstrate that the proposed settlement is fair and reasonable.

## III.  FINAL APPROVAL UNDER 29 U.S.C. § 216(b) IS ALSO WARRANTED.

Under the Fair Labor Standards Act ("FLSA"), employees may settle their claims if the

parties agree on the terms and the court approves the settlement as "a fair and reasonable resolution

of a bona fide dispute over the FLSA provisions." *Lynn's Foods Stores v. United States*, 679 F.2d 1354, 1353-1355 (11th Cir. 1982) (court approval in FLSA cases is favored "to promote the policy of encouraging settlement of litigation"). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Paredes v. Mansanto Co.*, 2016 WL 1555649, at *1 (N.D. Ind. Apr. 18, 2016).

The Settlement Agreement's terms outlined above are fair and reasonable for the Parties. A bona fide dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due. *Houston v. URS Corp.*, 2009 WL 2474055, at *9 (E.D. Va. Aug. 7, 2009). In reviewing the settlement of a plaintiff's FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Rotuna v. W. Customer Mgmt. Grp. LLC*, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indicia of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

The Parties disagree as to whether liability exists in this case and, if liability were proven, the extent of the damages. Specifically, among other disputes, the parties disagree on Plaintiff's ability to prove liability (individually and on a class/collective basis), a willful violation of the FLSA, and the amount/extent/scope of damages, including any award of liquidated damages

and/or civil penalties due to the members of the Settlement Class. Although both parties continue to believe in the merits of their respective claims and defenses, given the information learned throughout discovery, the time and expense associated with continuing to litigate this matter, and the uncertainty of dispositive motion practice and trial, and any resulting appeals, the parties agree that a compromise is appropriate at this stage of the litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching."). Payments to Settlement Class Members are directly proportionate to amounts allegedly due to them under the described methodology, less amounts commensurate with the risk inherent in further litigation as discussed above. These amounts constitute a reasonable and adequate recovery, and the parties' evaluation of The White Sheep's actual timekeeping and payroll records and the risks of continued litigation.

IV.     **THE REQUESTED ATTORNEY'S FEES AND COSTS SOUGHT BY CLASS COUNSEL ARE REASONABLE AND WARRANTED.**

The FLSA and IMWL provide that reasonable attorney's fees and costs shall be awarded to prevailing plaintiffs. 29 U.S.C. § 216(b); 820 ILCS 105/12(a); 820 ILCS 115/14(a). As set forth within the Agreed Motion for Preliminary Approval, the Plaintiff seeks reasonable attorney's fees and costs in the amount of thirty-five percent (35%) of the Maximum Settlement Amount in the total amount of Fifty-Two Thousand Five Hundred Dollars ($52,500.00). *See* D.E. 31. When fee-shifting statutes such as the FLSA and IMWL are involved, parties may negotiate settlements that encompass a defendant's total liability for damages, attorney fees, and costs. *See Evans v. Jeff D.,* 475 U.S. 717, 733-34, 738 n.30 (1986); *see, also, Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997). In this case, the parties negotiated a settlement which caps

Defendant's total obligation for court-approved litigation costs, expenses, and attorney's fees at Fifty-Two Thousand Five Hundred Dollars ($52,500.00).

Under the common fund doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In common fund cases, the Seventh Circuit has "consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir. 2007).

### a. Percentage of the Fund Method of Awarding Fees is Appropriate.

In the Seventh Circuit, the approach favored is to compute attorney's fees as a percentage of the benefit conferred upon the class. *Taubenfeld v. AON Corp.,* 415 F.3d 597, 599-600 (7th Cir. 2005). This is especially appropriate where the percentage accurately reflects the market. *In re Kentucky Grill Chicken Coupon Marketing & Sales Practices Litig.,* 2011 WL 5599129 at *11 (N.D. Ill. 2011). Indeed, the "use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Silverman v. Motorola,* 2012 U.S. Dist. LEXIS 63477 at *14 (N.D. Ill. 2012).

### b. Plaintiff's Request for 35% of Common Fund is Typical and Reasonable.

To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from 33% to 40% in comparable litigation. *See Gaskill v. Gordon,* 160 F.3d 361, 362 (7th Cir. 1998) (upholding award of 38% of common fund, and stating that "The typical contingent fee is between 33 and 40 percent…"); *Meyenberg v. Exxon Mobil Corp.,* 2006 U.S. Dist. LEXIS 52962 at *5 (S.D. Ill. 2006) ("The Court is independently aware that 33 1/3% to 40% plus costs of litigation is the standard contingent fee

percentage in this legal marketplace for comparable commercial litigation"); *Williams-Green v. J. Alexander's Restaurant, Inc.,* 277 F.R.D. 374 (N.D. Ill. 2011) (Magistrate Judge Cole approving attorney's fees in the amount of 40% of the class fund in class action settlement in wage and hour case); *Sanchez v. Roka Akor Chicago LLC,* 2017 WL 1425837 at *6 (N.D. Ill. 2017) (approving 39.5% of common fund as attorney's fees in wage and hour class action settlement) *citing In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) (the "usual range for contingent fees is between 33 and 50 percent"); *In re Dairy Farmers,* 80 F.Supp.3d 838, 845 (N.D. Ill. 2015) (in class actions, "usual range for contingent fees is between 33 and 50 percent").

Class Counsel seeks a fee of 35% of the common fund, which is reasonable and in accordance with the fees awarded in the case law set forth above and is consistent with the standard contingency fee percentage in the legal marketplace for comparable cases. *See Gaskill,* 160 F.3d at 362; *Meyenberg,* 2006 U.S. Dist. LEXIS 52962 at *5; *Williams-Green,* 277 F.R.D. 374. In wage and hour class action litigation – like this case – fee awards between thirty-three and forty percent are traditional in common fund cases. *Id.* Here, because Class Counsel's costs are $587.40, the percentage sought is actually 34% of the fund. Accordingly, Plaintiff requests that the Court award Class Counsel attorney's fees and costs in the amount of $52,500.00.

### c. **Plaintiff's Request is Warranted by Benefit Conferred on the Class, the Results Obtained, and the Risks Taken by Class Counsel.**

Plaintiff's fee request is further warranted in light of the significant and immediate financial benefit to the class. Under the settlement, Servers who worked at The White Sheep will share in the $150,000.00 fund. This is an excellent result. Claimants were not required to sign general releases to participate in the settlement; instead, their release was limited to wage claims only. The absence of a general release further exemplifies the excellent results achieved for the Class. *See Ramah Navajo Chapter v. Babbitt,* 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (noting the limited,

rather than general, nature of the release as further evidence of an exceptional result in favor of class).

Additionally, Class Counsel assumed a substantial risk of non-payment given the difficult and complex issues of law and fact that required sophisticated analysis, briefing, and argument. All tasks were performed at a high level, without compensation and with the risk of no compensation. The prosecution of this action consumed the attention and time of Class Counsel, often to the exclusion of other matters. Finally, Plaintiff's outstanding result serves the purpose of the IMWL and FLSA by vindicating rights these statutes were enacted to protect. Class Counsel obtained a recovery that provides $1.30 for each hour worked by Class Members based on data through the expected preliminary approval date. The recovery obtained for these Class Members meets or exceeds results obtained in similar cases. *See Williams-Green, et. al.,* 277 F.R.D. 374 (N.D. Ill. 2011) (approving class settlement for servers); *Starr, et. al. v. Chicago Cut Steakhouse, LLC*, No. 12-cv-4416 (approving class settlement for servers where $50,000.00 covered payments made to 566 servers). Accordingly, based on the normal rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, the quality of legal services rendered, and the uncertainty of recovery and the results obtained, Class Counsel is entitled to an award of reasonable attorney's fees and costs of 35% of the Settlement Fund.

## V.   AN INCENTIVE AWARD TO PLAINTIFF IS WARRANTED.

In her Agreed Motion for Preliminary Approval, Plaintiff informed the Court of her intention to seek a modest Incentive Award in addition to any payment she will receive as a pro rata share as a Claimant of the Settlement Class, to acknowledge her risk, service, time expended, and substantial benefits to the class. *See* D.E. 31. The Class Notice advised that Plaintiff would

request that Twelve Thousand Five Hundred Dollars ($12,500.00) be paid to her from the Settlement Fund as an Incentive Award. No Class Member objected.

"Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthoid Marketing Litig.,* 264 F.3d 712, 722-23 (7th Cir. 2001). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). Other courts have approved incentive awards as much as $25,000.00 and $20,000.00 per named plaintiff. *See American International Group, Inc.,* 2012 U.S. Dist. LEXIS 25265 at *59 (approving $25,000 per named plaintiff); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* 2004 U.S. Dist. LEXIS 1819 at *7 (S.D. Ill. 2004) (approving $20,000 per named plaintiff).

Plaintiff's role in this litigation was crucial. Plaintiff took substantial actions to protect the interests of potential class and collective members, and those actions resulted in a substantial benefit to 33 additional class members. Courts in the Northern District of Illinois have awarded incentive awards for named plaintiffs in similar cases. *See, e.g., Briggs, et. al. v. PNC Financial Services Group, Inc., et. al.,* 2016 WL 7018566 at *3 (N.D. Ill. 2016) (approving $12,500.00 service awards to 2 plaintiffs in FLSA settlement for a total of $25,000.00 in service awards). Plaintiff also took substantial risk. In agreeing to file this class action lawsuit in her name, Plaintiff undertook the risk that "should the suit fail, she could find herself liable for the defendant's costs." *See, e.g., Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 876-77 (7th Cir. 2012) ("The incentive award is designed to compensate [named plaintiffs] for bearing these risks"). Plaintiff also sacrificed a substantial amount of time and effort to prosecute this lawsuit on behalf of fellow

Servers. Plaintiff met, conferred, and regularly corresponded with her counsel. Plaintiff responded to written requests for information and attended the Court-supervised Settlement Conference that set this resolution into motion. Plaintiff reviewed the terms of the settlement agreement and proposed plan of allocation. Accordingly, Plaintiff requests that the Court grant her request for an Incentive Award in the amount of $12,500.00 because such payment is fair and reasonable and supported by relevant case law. *See Briggs,* 2016 WL 7018566 at *3; *American International Group, Inc.,* 2012 U.S. Dist. LEXIS 25265 at *59; *Berger,* 2004 U.S. Dist. LEXIS 1819 at *7.

## VI.     ILYM GROUP HAS FULFILLED RESPONSIBILITIES AND EARNED THE REQUESTED AMOUNT IN CLAIMS ADMINISTRATION COSTS.

Plaintiff advised in her Agreed Motion for Preliminary Approval that the cost of administering the Settlement was estimated to be approximately Fifteen Thousand Dollars ($15,000.00). *See* D.E. 31. The Claims Administrator has earnestly fulfilled its duties and responsibilities as contemplated by the Settlement Agreement to help facilitate administration of the settlement. Additionally, it has provided status reports and communicated with the Parties during the claims administration process. The Claims Administrator capped its quoted costs in this case to $8,000.00. Therefore, the Court should approve payment for services earned by the Claims Administrator in the amount of Eight Thousand Dollars ($8,000.00). *See* **Ex. B**.

## VII.    DEFENDANT PROVIDED NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT AND THERE ARE NO OBJECTORS.

Although it is likely that the Class Action Fairness Act does not apply as the matter in controversy does not exceed $5,000,000.00 and the class does not exceed 100 people (*Juvera v. Salcido*, No. CV-11-2119-PHX-LOA, 2013 WL 6628039, n3 (D. Ariz. Dec. 17, 2013)), out of

caution, on or about August 8, 2023[1], The White Sheep served notice as set forth in the Class Action Fairness Act, 29 U.S.C. §1715. At the time of filing this brief, 80 days have passed since serving notices. *See* **Exhibit D**, Declaration of Stephanie M. Dinkel, at ¶4. By the time of the fairness hearing, 90 days will have passed since serving the notices (*Id.* at ¶4, 6) and should any objections be received in the meantime, counsel will advise the Court. At this time, no state or Federal official has contacted the parties regarding any objections and/or the Agreement. *Id.* at ¶7. Andy Fox from the Illinois Department of Labor contacted Defendant's counsel confirming receipt of the CAFA notice and confirming that the IDOL did not have any concerns with the settlement, that no further action from the IDOL is needed, and that the IDOL would not be taking any further action. *Id.* at ¶8. The IDOL's representations further support why this settlement is reasonable and should be approved, including ordering that Defendant has complied with CAFA and the settlement is enforceable. The parties are not aware of any state or Federal official objecting to this Agreement. *Id.* at ¶9. Therefore, in addition to the fact that the amount in controversy does not meet the threshold of $5M and there are not 100 putative class members, to the extent necessary Defendant's notices satisfy the requirements and 28 U.S.C. §1715(e) is not applicable to the parties' Agreement nor this matter. *See Johnson et al. v. Meriter Health Services Employee Retirement Plan*, No. 10 CV 426-wmc, 2015 WL 13546111, at *3 (W.D. Jan. 5, 2015).

---

[1] Counsel for the White Sheep served notice on August 8, 2023, which was within ten days of this Court's preliminary approval order. Although there are no objections from Plaintiff, from any class members, or from any state or federal officials, to the extent the CAFA applies to this case, and to the extent the service of the CAFA notices is construed at any time as outside of the notice period, this has no effect on final settlement approval. *See Adoma v. U. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 973 (E.D. Cal. 2012) (collecting cases and finding that "class members may not exempt themselves from a settlement so long as at least 90 days elapse between service of the notice and entry of an order granting final approval of the settlement, as required by 28 U.S.C. § 1715(d).")

## VIII.  CONCLUSION

WHEREFORE, Plaintiff, KATELYN PRATE, respectfully requests that on or after November 7, 2023, the Court: (1) grant final approval of the Class and Collective Settlement Agreement; (2) find the Settlement fair, reasonable, adequate, and in the best interests of the Class Members; (3) approve Class Counsel's application for an award of attorney's fees and costs in the amount of $52,500.00; (4) approve the Incentive Payment to the Plaintiff in the amount of $12,500.00; (5) approve the payment of reasonable Settlement Administration Costs to ILYM Group, Inc. in the amount of $8,000.00; (6) declare that Defendant's Notices of Proposed Class Action Settlement satisfies any obligation that Defendant may have to provide notice to the appropriate Federal and state officials pursuant to 28 U.S.C. §1715 and that 29 U.S.C. §1715(e) does not apply to the Settlement Agreement; and (7) dismiss this Lawsuit, and release and bar Released Claims by Class Members who did not opt-out of the Settlement. Consistent therewith, the Parties also respectfully request that the Court enter the Proposed Order attached to this motion as Exhibit A, and also submitted in word format to the Court's proposed order inbox.

Respectfully submitted,

**USA EMPLOYMENT LAWYERS –
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33301
*Counsel for Plaintiffs*

By:  */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Illinois Bar No. 6328923
Jordan@jordanrichardspllc.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on October 27, 2023, he electronically filed the forgoing **PLAINTIFF'S AGREED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:


**STEPHANIE M. DINKEL, ESQUIRE**
KOEHLER DINKEL LLC
900 S. Frontage Rd. Suite 300
Woodridge, Illinois 60517
Telephone: (630) 505-9939

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Illinois Bar No. 6328923